IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DAWN ANNE JUSTIN,

                Plaintiff,                            OPINION AND ORDER

v.

                                                              20-cv-1066-wmc

KILOLO KIJAKAZI, Acting Commissioner
For Social Security,

                Defendant.

Pursuant to 42 U.S.C. § 405(g), plaintiff Dawn Anne Justin seeks judicial review of the Social Security Commissioner's final determination, which upheld the opinion of Administrative Law Judge ("ALJ") Deborah M. Giesen, that Justin was not disabled. Justin previously filed an appeal of a denial of benefits in this court. *Justin v. Saul*, No. 19-cv-580-wmc. The parties jointly moved for remand, which this court granted. *Id.* (dkt. ##12, 15). In her second appeal, plaintiff maintains that the ALJ erred in failing to adequately assess Justin's moderate limitations in interaction with others and in concentration, persistence and pace ("CPP"). For the reasons that follow, the court will affirm the Commissioner's decision.

BACKGROUND[1]

A. Overview

Plaintiff Dawn Anne Justin applied for social security disability benefits and supplemental security income on March 21, 2016, claiming an alleged disability onset date

---

[1] The following facts are drawn from the administrative record, which can be found at dkt. #16.

of December 1, 2015. She has at least a high school education, is able to communicate in English and has past relevant work experience as a telemarketer and marketing director. Justin did not engage in substantial gainful activity from December 1, 2015, through September 29, 2019. During the time in which her disability benefits application was pending, Justin began working again on September 30, 2019. As such, she is seeking a closed period of disability from December 1, 2015, though September 29, 2019.

With a birth date of November 30, 1968, Justin was 47 years-old at her alleged disability onset, which is defined as a "younger individual." 20 C.F.R. §§ 404.1563, 416.963. In her application, Justin claimed disability based on bipolar disorder type 1 with psychotic features, hypothyroidism and stage 3 kidney function. (AR 231.)

### B. ALJ Decision

ALJ Giesen held a video hearing on June 19, 2018, and issued a decision finding that Justin was not disabled on September 12, 2018. As indicated above, on appeal to this court, the parties stipulated to remand. The case was reassigned to ALJ Giesen, and she held a second hearing, this time via telephone, on September 15, 2020, at which Justin appeared with her counsel, the same counsel representing her in this appeal. The parties agree that on remand the Appeal Council specifically directed the ALJ to

> [g]ive further consideration to the non-examining source opinions of Erika Gilyot-Montgomery, Psy.D. and Michael E. Cremerius, Ph.D., . . . and explain the weight given to such opinion evidence. Give further consideration to claimant's maximum mental residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations.

(AR 1248.)

On September 25, 2020, the ALJ issued a second opinion finding that Justin had not been under a disability within the meaning of the Social Security Act from her onset date of December 15, 2015, through September 29, 2019. The ALJ first determined that Justin's bipolar disorder with psychotic features constituted a severe impairment. (AR 1251.) The ALJ, however, concluded that none of Justin's physical impairments are severe, a finding that Justin does not challenge in this appeal.

The ALJ next considered whether Justin's mental impairment met or medically equaled the criteria of listing 12.04 (depressive, bipolar and related disorders). The ALJ considered the four "paragraph B" areas and concluded that Justin had mild impairments with respect to understanding, remembering, or applying information and adapting or managing oneself, and had no more than moderate limitations with respect to interacting with others and concentration, persistence and pace ("CPP"). This appeal concerns the ALJ's latter findings and her attempt to address these limitations in crafting a residual functional capacity ("RFC").

In determining that Justin had no more than moderate limitations in interacting with others, the ALJ noted: (1) a close friendship with a couple who have provided financial support; (2) an improved relationship with her mother; (3) regular workouts at a boot camp; (4) continued work at the resort owned by her parents, which included interacting with guests; (5) interactions with a local tourism committee to plan two wedding expos; (6) travel to visit friends; and (7) assisting a friend with cleaning. (AR 1252-53.) The ALJ also noted online social medial activities, shopping and dining out. In addition, the ALJ relied on medical records indicating that she was "friendly and cooperative" during

3

psychotherapy and medication management appointments and that her behavior and interactions were otherwise appropriate and unremarkable with the exception of manic episodes requiring hospitalization. (AR 1253.)

With respect to CPP, the ALJ relied on the following facts to find moderate limitations: (1) Justin's reports of regularly watching movies, cleaning and preparing meals; (2) her ability to work approximately 20 hours per week at her parents' resort, including planning bridal expos and wine walks; (3) ability to drive a car extensively; (4) medical records showing that Justin's concentration was "good during exams"; and (5) Justin's ability to focus on financial and self-care activities. (*Id.*)

The ALJ found that Justin had the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations:

> she is limited to simple, routine tasks with clear, simple expectations involving simple work related decisions not requiring a fast production rate pace but can involve variable paced task[s]; the work should not require strict production quotas but end of the day production goals[]/quotas can be tolerated; she can have occasional changes in work routine, occasional interaction with coworkers and supervisors and no more than incidental contact with the public.

(AR 1254.)

The ALJ then described the standard for evaluating plaintiff's symptoms and the "intensity, persistence, and limiting effects" of those symptoms, citing appropriately to SSR 16-13p. (AR 1254.) After setting forth that standard, the ALJ recounted plaintiff's bipolar disorder history during the relevant period, explaining that "[w]hile the claimant has a history of hospitalizations due to bipolar disorder, the claimant's bipolar disorder essentially remits when she is compliant with medication and treatment." (AR 1255.) In

4

brief, the ALJ reviewed Justin's history of hospitalization intermittently from November 2015 through March 2016. As context, Justin's bipolar disorder appears to have been well-controlled with lithium prior to this period. Justin went off Lithium in November 2015 due to physical side effects of that drug. Unfortunately, this triggered a manic episode, resulting in Chapter 51 hospitalization from November 20, 2015, through December 18, 2015. (AR 1256.) Justin was hospitalized again from December 29, 2015, through January 18, 2016, and again from February 4, 2016, through approximately March 8, 2016. By March 2016, however, the records reflect that Justin "was stable on psychotropic medications" and was described as "doing well" and "good." (AR 1256.) While some ups and downs were noted over the next two-year period, Justin was generally stable. In March 2018, there was one instance of "increased symptoms," but by April 2018, her symptoms were against described as "stable." (AR 1257.)

Unfortunately, with a change in medication in November 2018, Justin "decompensated again" and was admitted to Sacred Heart Hospital and placed on another Chapter 51 hold. (*Id.*) During this hospitalization, the ALJ noted that examining psychiatrists raised concerns that she was "feigning the catatonia and psychosis." (*Id.*; *id.* at 1258 (finding behavior "deliberate and indicative of a factitious disorder").) By early February 2019, Justin had acclimated to new medication and was discharged. Following that hospitalization, Justin was described as "stable," specifically noting that she had felt that she had "hit her sweet spot" with respect to medication management. (AR 1258.)

Based on this review of the record, the ALJ acknowledged Justin's record of hospitalizations but concluded that "the exacerbations all occurred in the context of

medication changes or noncompliance." (AR 1259.) Otherwise, the record reflected Justin's ability to "participate in a wide range of activities of daily living," including working at her parent's resort, planning wedding expos and wine walks, engaging with the local chamber of commerce, and holding a job during periods of stabilization, including from September 2019 through the hearing, albeit there appears to be a gap in work apparently caused by the pandemic. (AR 1259.)

The ALJ next considered the opinion testimony, starting with the two state agency psychological consultants, both of whom were mentioned in the Appeals Council's remand order. With respect to Erika Gilyot-Montgomery, Psy.D., who provided the initial review, the ALJ placed only "some weight" on her opinion because the additional evidence -- namely the November 2018 decompensation and subsequent hospitalization -- warranted greater limitations than she had found. (AR 1259-60.) With respect to Michael Cremerius, Ph.D., the ALJ placed "significant weight" on his opinion. Critically, he found the same limitations -- moderate limitations with respect to interacting with others and CPP -- as that found by the ALJ. (AR 1260.) Still, Cremerius concluded that Justin

> would be capable of understanding and remembering simple and detailed instructions, but complex instructions would be precluded, would be capable of performing simple and detailed tasks, but complex tasks would be precluded; would be limited to occasional contact with co-workers and supervisors, and only incidental contact with the public; could have no responsibility for serving the public; and could not perform fast-paced tasks with strict production quotas.

(*Id.* (citing Exs. 5A, 6A).)

The ALJ also considered statements in the record about Justin's inability to work, discounting those, which plaintiff does not challenge in this appeal. The ALJ then

summarized her approach in formulating the RFC, explaining that she accommodated Justin's bipolar disorder with nonexertional limitations, specifically noting that "[s]uch limitations would accommodate a lesser degree of stress in order to diminish the risk of exacerbation of her symptoms." (AR 1262.)

Finally, with the assistance of the vocational expert, the ALJ concluded that Justin could not perform her past relevant work, but would be able to perform other jobs in sufficient numbers in the national economy, including dining room attendant, cleaner, marker, and kitchen helper. As such, the ALJ concluded that Justin was not disabled for the relevant period.

OPINION

The standard by which a federal court reviews a final decision by the Commissioner of Social Security is well-settled. Specifically, findings of fact are "conclusive," so long as they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Provided the Commissioner's findings under § 405(g) are supported by such "substantial evidence," this court cannot reconsider facts, re-weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Similarly, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993).

At the same time, the court must conduct a "critical review of the evidence," *id.*, and insure the ALJ has provided "a logical bridge" between findings of fact and conclusions of law. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). Thus, plaintiff's challenge on appeal must be considered under this deferential standard.

Plaintiff raises one overarching challenge on appeal -- the ALJ failed to adequately address Justin's moderate limitations in interacting with others and with CPP in crafting the RFC and communicating that RFC in hypotheticals to the VE -- but she attacks the ALJ's opinion in two key respects. First, she criticizes the ALJ's bases for finding a moderate limitation in both categories, but stops short of arguing for, or presenting any evidence in support of, a finding of marked limitations. Specifically, she contends that the fact that she was "friendly and cooperative" during medical appointments is "inadequate to show that Justin's mental impairments are not severe and impactful on the ability to sustain work." (Pl.'s Opening Br. (dkt. #21) 13.) There are several problems with this argument. Critically, the ALJ *did* find that Justin's bipolar disorder was a severe impairment. Moreover, she further found that she had moderate limitations with respect to her ability to interact with others and factored that into the RFC, limiting her to only occasional interactions with coworkers and supervisors and only incidental interactions with the public. Plaintiff cites to *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013), for the fairly unremarkable proposition that an ALJ cannot cherry-pick from the record. But, here, the ALJ fully acknowledged plaintiff's manic episodes triggered by medication changes. She did not ignore those records, but she also noted that when Justin's medications were well-managed, she was described as stable and her medical examinations

were unremarkable. The court finds no fault in the ALJ's reliance, in part, on medical records noting that Justin was "friendly and cooperative" during appointments.

Relatedly, plaintiff also challenges the ALJ's reliance on observations made by treatment providers about Justin's mood or temperament, arguing that "the fact that Justin had relatively minor symptoms while in the safety and familiarity of her medical provider's office does not necessarily mean that Justin did not have problems in other contexts and, specifically, in relation to the contest of the stress associated with sustained work." (Pl.'s Br. (dkt. #21) 14.) Again, there are several problems with this argument. The ALJ did not solely, or even primarily, rely on these medical notes to find that Justin had no more than moderate limitations in these two functional areas. This was one of several reasons the ALJ provided for not crediting any further limitations; the ALJ also relied on Justin's ability to work at her parent's resort and the specific activities she engaged in in that work. Moreover, as plaintiff acknowledges, the ALJ *did* find that Justin had moderate limitations in interacting with others and in CPP and accommodated those limitations in crafting her RFC.

Plaintiff also faults the ALJ for considering her work experience. While the court agrees that an ALJ cannot rely on a claimant's daily activities to conclude that a claimant could sustain full-time, competitive employment, *see Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014), the ALJ did not do that here. Instead, she reasonably relied on Justin's employment at her parents' resort and other work-related activities, like organizing bridal expos and wine events, to determine that she only had moderate limitations in interacting with others and CPP. Furthermore, while plaintiff contends that the ALJ was required to

9

make further inquiries about the nature of her work at her parents' resort, she offers no support for that requirement. In *Engstrand v. Colvin*, 788 F.3d 655 (7th Cir. 2015), the Seventh Circuit criticized the ALJ for assuming why the claimant stopped working without any evidence in the record to support that finding. *Id.* at 661-62. *Engstrand* does not stand for the proposition that an ALJ must question the claimant before drawing an adverse credibility finding based on an inconsistency, as plaintiff argues in her brief. Regardless, the ALJ *did* question Justin about the nature of her work at her parents' resort. (AR 1285 (describing work setting up bridal expos); AR 1288 (testifying about cleaning, greeting guests, taking guests on guided hikes).)

In addition to challenging the ALJ's bases for finding a moderate limitation, plaintiff also challenges the ALJ's translation of moderate limitations in these two areas into an RFC. Specifically, she argues that the state agency consultant's opinions cannot save the formulations because she only gave "minimal consideration to these opinions." (Pl.'s Opening Br. (dkt. #21) 24.) Not true. The ALJ placed "significant weight" on the opinion of Dr. Cremerius. (AR 1260.) Moreover, the ALJ's RFC tracks Dr. Cremerius's opinion. (*Compare* AR 1254 *with* AR 274-75.) The Seventh Circuit has repeatedly recognized that "an ALJ may reasonably rely upon the opinion of a medical expert who translates [CPP] findings into an RFC determination." *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019).[2]

---

[2] Justin argues that the ALJ erred in translating "superficial" to "occasional" in crafting an RFC, but Dr. Cremerius used *occasional*, not superficial in describing Justin's abilities and limitations. As such, this argument is a red herring.

While the court agrees with plaintiff that bipolar disorder is a "condition likely to result in good and bad days" (Pl.'s Opening Br. (dkt. #21) 16), the record reflects that plaintiff was stable for approximately a two year period between her two manic episodes and hospitalizations and was stable again for approximately two years from the second hospitalization stint and the second ALJ hearing. Plaintiff does not point to anything in the record indicating that her ability to work would be interrupted on a more regular basis and, specifically, she points to nothing to support a finding of absenteeism. The ALJ acknowledged these periods of decompensation, but also noted that these periods were temporary, tied to mediation changes. The court finds no error in the ALJ's consideration of plaintiff's mental health impairments and, specifically, her accommodation of those impairments with nonexertional limitations.

## ORDER

IT IS ORDERED that the decision of defendant Kilolo Kijakazi, Acting Commissioner of Social Security, denying plaintiff Dawn Anne Justin's application for disability insurance benefits is AFFIRMED. The clerk of court is directed to enter judgment in defendant's favor and close this case.

Entered this 27th day of June, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge